UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MATTHEW CRANE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.:  20-CV-30159-MGM |
| | : | |
| JOSEPH KOZLOWSKI, ERIC | : | |
| ORTIZ, MICKEY DUMAIS, | : | |
| JOSEPH BRUNELLE, | : | |
| CHICOPEE POLICE | : | |
| DEPARTMENT and the CITY | : | |
| OF CHICOPEE, | : | |
| Defendants. | : | |
| _____ | : | |

**DEFENDANT JOSEPH BRUNELLE'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS</u>**

As the reasons for requesting dismissal, Brunelle states the following:

**I.    INTRODUCTION**

In this civil rights action, the plaintiff alleges that, in October, 2018, he was involved in an early morning motorcycle crash in Chicopee.  *See generally* Second Am. Compl   The plaintiff says that after one police officer from the City of Chicopee arrived in response to the crash, police presence that later was supplemented with additional officers, he was detained unnecessarily and unjustifiably, with the unlawful seizure then expanding to include unreasonable force being visited upon him by officers.  *See id.*  From that asserted maltreatment, the plaintiff has claimed injury of constitutional magnitude and seeks compensation from a collection of individual and municipal defendants.  *See id.*

It is in attempting to set out the claimed factual and legal bases for his grievances, and specifically in providing sufficient threshold information concerning the unavoidable and critical litigation inquiries of "who did what to whom, when, where and why[;]" *Educadores*

*Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1ˢᵗ Cir. 2004); that all of the plaintiff's claims against Brunelle are revealed not to be viable based upon straightforward application of settled principles of law.  Put simply, the second amended complaint suffers from the most basic of pleading deficiencies in that the plaintiff fails to provide sufficient factual support to render Brunelle a plausible defendant.

Although the plaintiff himself possesses no facts to nourish the notion that Brunelle seized him, assaulted him, battered or otherwise used any quantum of force whatsoever on him, Brunelle nonetheless is sued and thereby subjected to all of the litigation burdens attendant to being named as a defendant in a federal civil rights matter, in addition to the personal and professional consequences of being so named.  Given that the law does not embrace a sue first and ask questions later approach where a plaintiff is permitted to sue today in the hope that adequate information later will be developed to support the litigation conduct previously taken, Brunelle is entitled to the dismissal of this action.

## II.     LITIGATION LANDSCAPE

### A.  General Factual Backdrop

As limned in the second amended complaint, at approximately 1:45 a.m. on October 6, 2018, the plaintiff was operating a motorcycle on or around Grove Street in Chicopee; at that time, the plaintiff was observed, along with the operators of another motorcycle and two cars, by defendant Joseph Kozlowski, a Chicopee police officer, and Kozlowski decided to follow the group of motorists.  *See* Second Am. Compl., ¶¶ 15, 18-19.[1]  Kozlowski soon lost sight of the convoy but, upon hearing the sounds of what appeared to be a crash, Kozlowski explored further and came upon the plaintiff lying in the roadway with the plaintiff's motorcycle on the ground

---

[1] An answer to the second amended complaint on behalf of Kozlowski, in addition to defendant Eric Ortiz, already has been filed with this Court.  *See* Doc. No. 33.  This motion concerns only the claims made against Brunelle.

nearby.  *See id.*, ¶ 20.

According to the plaintiff, Kozlowski, without probable cause to believe that a crime had been committed, walked over to the plaintiff, who then was sitting up, and attempted to hold the plaintiff down by placing his hands on the plaintiff's shoulders.  *See id.*, ¶¶ 24-25.  The plaintiff says that he attempted to get away from Kozlowski's grasp, but Kozlowski would not let him leave, despite the plaintiff not having been placed under arrest, and instead Kozlowski used a defensive tactic known as the escort position to try to maintain control of the plaintiff.  *See id.*, ¶¶ 26-27.  At approximately the same time, defendant Eric Ortiz; *see* footnote one of this memorandum; arrived on scene.  *See id.*, ¶ 31.

Next, the plaintiff states that he "was able to break free" from Kozlowski's escort position grip, after which point he claims that Kozlowski engaged in a "football tackle" of the plaintiff.  *See id.*, ¶ 29.  The plaintiff alleges that Ortiz and Kozlowski then placed the plaintiff in a controlled position in which the plaintiff's arms were held at a ninety-degree angle behind his back; *see id.*, ¶ 32; and, when the plaintiff asked to go to the bathroom, the request was denied by Kozlowski and Ortiz.  *See id.*, ¶¶ 32-34.  The plaintiff then "broke free" again, at which point it is said that Kozlowski performed an arm bar takedown that brought the plaintiff to the ground. *See id.*, ¶ 35.  At some point while Kozlowski and Ortiz were engaged with the plaintiff, defendant Mickey Dumais arrived and, the second amended complaint alleges, Dumais saw Kozlowski trying to pin the plaintiff to the ground; when the plaintiff continued to try to pull away, Dumais is alleged to have assisted Kozlowski and Ortiz in attempting to pin the plaintiff to the ground. *See id.*, ¶¶ 38-40.

The second amended complaint indicates that, during the course of this encounter, Kozlowski, Ortiz and Kozlowski discovered that the plaintiff was in possession of a firearm.  *See*

*id.*, ¶¶ 43-45.  After that revelation, the plaintiff was arrested and charged with various criminal offenses, including carrying a firearm without a license and the possession of a firearm without a firearm identification card.  *See id.*, ¶¶ 46-47.  All told, seven criminal charges were advanced against the plaintiff, with the plaintiff's pleading alleging that several of those charges later were the subject of a nolle prosequi or a required finding of not guilty at the close of the Commonwealth's case during the criminal trial; as to the remaining gun charges, the plaintiff says that the jury returned a verdict of not guilty on both counts.  *See id.*, ¶¶ 16-17, 46.

**B.  The Second Amended Complaint's Predicate As To Brunelle**

Overall, the plaintiff's most recent iteration of his operative pleading continues to remain notable for the marked contrast between the factual predicate concerning other individual defendants, namely Kozlowski and Ortiz, and the predicate concerning Brunelle.[2]  As to Kozlowski and Ortiz, the plaintiff makes very particular claims relating to seizure and to uses of force, including:  Kozlowski holding the plaintiff down by the plaintiff's shoulders while he was seated on the ground; Kozlowski placing the plaintiff in an escort position when the plaintiff tried to flee; Kozlowski tackling the plaintiff; Kozlowski and Ortiz holding the plaintiff with the plaintiff's arms angled behind his back; and Kozlowski performing an arm bar takedown of the plaintiff.  *See id.*, ¶¶ 25, 27, 29, 32 and 35.  Taken as a true history of the event, as they must be for present purposes, such factual assertions paint a picture of plausibility relating to seizure and force claims concerning Kozlowski and Ortiz.

The second amended complaint's representations as to Brunelle, however, reflect a point

---

[2] To be clear, Kozlowski and Ortiz do not agree with the plaintiff's factual recitation in his second amended complaint and will defend their conduct most vigorously.  While they believe the plaintiff's factual claims will be proven false in time, they have answered the second amended complaint because it is recognized that, at this nascent stage, the plaintiff's version of events must be credited and, distorted though it might be, the plaintiff's pleading states plausible claims against Kozlowski and Ortiz.

on the other end of the pleading spectrum. *See generally* Second Am. Compl. Outside the confines of the section in the second amended complaint advancing the sundry causes of action, where Brunelle at times is listed among the collection of legal buzzwords and elemental presentations; *see id.*, ¶¶ 54-59, 66-71; Brunelle's existence is noted in just two substantive paragraphs within the pleading. First, paragraph five asserts that Brunelle is a natural person, a Commonwealth resident and an individual who served as a police officer for the City of Chicopee at all relevant times; lastly, this same paragraph states that Brunelle did not testify at the plaintiff's criminal trial. That is all fine and Brunelle disputes none of it, however, surely none of that information moves the plausibility needle with respect to civil rights and related tort claims against Brunelle.

The plaintiff's theories of liability as to Brunelle rise or fall with the one sentence, consisting of thirty-eight words, within paragraph forty-two of the second amended complaint. At the point in the sequence after the plaintiff allegedly had been seized, held, manipulated, tackled and taken to the ground, it is stated that: "[d]efendant Brunelle, who had arrived and was present on scene, also joined in and participated in unlawfully pinning plaintiff on the ground, using unlawful and excessive physical force to assist the other individual defendants in bringing the plaintiff to the ground." *Id.*, ¶ 42. A reader of this sentence informed by the plausibility standard should note both what the sentence does, namely present a couple of labels that constitute conclusory remarks or legal conclusions masquerading as factual representations, and what it does not do, namely, present proper factual content explaining what Brunelle "did" to the plaintiff, when, where and why. *See Educadores Puertorriquenos en Accion*, 367 F.3d at 68. If the Court wishes to know what it means as a factual matter to "join[] in" or "participate[] in" a use of force, the second amended complaint does not grant the wish. Even a reader consuming

5

the sentence without knowledge of this Court's pleading standard might be befuddled:  did Brunelle put his hands on the plaintiff and, if so, how and where?  Did he sit on him?  Did he participate by offering the officers verbal encouragement as they touched the plaintiff?

The second amended complaint, of course, is not the first time the plaintiff has tried his hand at advancing a viable claim against Brunelle.  For reasons that will be discussed, this Court is free to make note of predecessor representations as it evaluates plausibility here.  In the first amended complaint, for example, the plaintiff's substantive allegation against Brunelle simply was that, at the criminal trial, "[d]efendant Dumais stated that defendant Brunelle was also involved in trying to bring plaintiff to the ground."  First Am. Compl., ¶ 42.[3]  While the second amended complaint's substantive allegation against Brunelle is slightly longer, by twenty-one words, it suffers from the same fundamental flaw:  formless labeling, threadbare recitals or legal conclusions couched as fact do not state a claim of factual plausibility.

### C.  The Plaintiff's Claims

The second amended complaint advances a constellation of six causes of action against the various defendants, four of which are brought against Brunelle and are the subject of this motion practice.  More particularly, as to Brunelle, who has been sued in both his individual and official capacities; *see* Second Am. Compl., ¶ 8; the plaintiff claims that Brunelle:  (1) violated the plaintiff's right to remain free from an unreasonable seizure as subject to redress by means of 42 U.S.C. § 1983; *see* Second Am. Compl., ¶¶ 54-56 (Count I); (2) used unreasonable force, also

---

[3] As will be noted, plaintiff's counsel has conceded that the entire basis for his claims against Brunelle comes directly from the criminal trial testimony of Dumais.  It is worth noting that what the plaintiff has represented in his first amended complaint, and most assuredly the additional conclusory labels deployed by the plaintiff in the second amended complaint, are not faithful to the actual testimony of Dumais.  In point of fact, Dumais never said that Brunelle touched the plaintiff, or even joined in or participated somehow in a touching; Dumais simply testified that Brunelle was "there" at the scene and was observed "going to assist" Kozlowski.  *See infra*, Section II.D.  Of course, mere presence on scene does not by some "mysterious alchemy render [an officer] legally responsible under section 1983" for the actions of another; *see Calvi v. Knox Co.*, 470 F.3d 422, 428 (1st Cir. 2006); nor does it suffice to state a claim of assault and battery.  *See infra*, Section III.D.

as redressable pursuant to § 1983; *see* Second Am. Compl., ¶¶ 57-59 (Count II); (3) assaulted and battered the plaintiff; *see* Second Am. Compl., ¶¶ 66-68 (Count IV); and intentionally assaulted and battered the plaintiff. *See* Second Am. Compl., ¶¶ 69-71 (Count V). The plaintiff has not rendered Brunelle a plausible defendant as to these claims and this motion follows.

### D.  The Anatomy Of The Record

While, in general, a reviewing court ought not consider materials outside the complaint at the Rule 12 (b) (6) stage, it is settled that there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Gargano v. Liberty Intern. Underwriters, Inc.*, 572 F.3d 45, 47 n.1 (1st Cir. 2009) quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). In that way, this Court "may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (internal citation omitted).

In this instance, it is appropriate for this Court to have before it and consider three documents. First, appended hereto and designated as "Attachment A" is an excerpt from the transcript of the plaintiff's criminal trial. Not only does the plaintiff reference the underlying criminal proceedings, including the trial, at various points in the second amended complaint; *see* Second Am. Compl., ¶¶ 5, 16-17, 19, 27-28, 35, 37, 46, 48-49; but the plaintiff also quotes from the trial transcript on multiple occasions in his second amended complaint. *See* Second Am. Compl., ¶¶ 19, 28, 35, 37. Most importantly for present purposes, as will be confirmed shortly, the entire predicate for the plaintiff's claims against Brunelle, as located within paragraph forty-two of the second amended complaint, arises out of the trial testimony of Dumais and

7

Attachment A is that portion of Dumais' testimony that mentions Brunelle. *See* Second Am. Compl., ¶ 42; *see also* Attachment A. Consequently, this Court may consider the excerpted portion of the transcript within Attachment A, as it is material that is central to the plaintiff's claim and the transcript is sufficiently referred to, and relied upon, in the second amended complaint.

Second, and very much intertwined with the first category, appended hereto and designated as "Attachment B" is a copy of the email exchange of counsel related to the LR, D. Mass. 7.1 conferencing that occurred prior to Brunelle's motion practice directed at the first amended complaint. This document may be considered as it already is within the docket for this case, having been attached to Brunelle's opposition to the plaintiff's motion to amend, and therefore is subject to judicial notice; *see* Doc. No. 22-1; and also because its authenticity cannot be disputed. The communication is important for present purposes because it serves to confirm that, according to plaintiff's counsel, "*the basis*" for the plaintiff's claims against Brunelle derives entirely from the criminal trial testimony of Dumais; Attachment B (emphasis added); a representation that confirms the critical nature of Attachment A here. If the testimony of Dumais is the foundation for the plaintiff's claims against Brunelle, it is central to understand exactly what Dumais said during that testimony when one considers whether a viable claim has been stated against Brunelle.

Further, Attachment B is significant because it demonstrates that during this LR, D.Mass. 7.1 conference, counsel for the plaintiff indicated a willingness to dismiss Count V of the then-operative first amended complaint, given that there is no such thing as a claim of "intentional" assault and battery as compared to a claim of assault and battery, which both are intentional torts, rendering Count V duplicative of Count IV. *See* Attachment B. Despite this statement on

December 1, 2020, when the plaintiff later filed his motion to amend on December 29, 2020, the proposed pleading *still contained* the same Count V; Doc. No. 14-1, p. 11; and now, in the second amended complaint, Count V, alleging an "intentional assault and battery" separate from Count IV's assault and battery claim, remains.  *See* Second Am. Compl., p. 11.

Third, appended hereto and designated as "Attachment C" is the plaintiff's October 2, 2020 presentment letter to the City of Chicopee.  This document is contained within the docket already, as it was attached to Brunelle's motion to dismiss the first amended complaint.  *See* Doc. No. 11-2.  It was appended to that motion practice because the presentment letter obviously was central to negligence claims against the City of Chicopee, claims that the plaintiff pressed in his first amended complaint; *see* First Am. Compl., pp. 12-13; *see also Gargano*, 572 F.3d at 47 n.1 (material of central importance to claims may be considered on a motion to dismiss); that now have been excised from the second amended complaint.  *See* Second Am. Compl.  While the negligence claims now have been removed from the second amended complaint, the presentment letter remains subject to judicial notice as an entry on this Court's docket and may be considered at this stage in that it continues to be an authentic piece of correspondence that represents, through his counsel, the plaintiff's articulation of his claims against defendants. Appropriately in the record, the reason why the document warrants consideration here is not so much for what it says, but rather for what it does not say.  A review of the presentment letter reveals that, while sundry factual and legal assertions are made concerning the actions of Kozlowski, Ortiz and Dumais, no such allegations are made concerning Brunelle and, in fact, Brunelle is not even mentioned in the presentment letter.  *See* Attachment C.  Put aside the concepts of a primary wrongdoer or even a peripheral wrongdoer, the plaintiff did not consider Brunelle even to be worthy of mention by name in framing his allegations arising out of this

matter.

## III.   ARGUMENT

### A.  Standard Of Review

Rule 12 (b) (6) of the Federal Rules of Civil Procedure authorizes the dismissal of actions which "fail to state a claim upon which relief may be granted."  In evaluating such a motion, testing the legal sufficiency of the pleading, the complaint is to be construed in the light most favorable to the plaintiff, meaning all well-pleaded facts are to be taken as true and that the plaintiff is conferred with the benefit of all reasonable inferences that may be drawn from such factual allegations.  *See Cooperman v. Individual Inc.*, 171 F.3d 43, 46 (1st Cir. 1999); *see also Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir. 1998).  In this inquiry, the Court is to evaluate whether the factual allegations in the operative pleading "possess enough heft" to set forth a "plausible entitlement to relief."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

"In resolving a motion to dismiss, a court should employ a two-pronged approach.  It should begin by identifying and disregarding statements in the complaint that merely offer "'legal conclusion[s] couched as fact[]'" or "[t]hreadbare recitals of the elements of a cause of action."  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (brackets in original; citations omitted).  Once the task of excision is performed, if the remaining factual content "'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility. . . . 'The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not merely a conceivable, case for relief.'"  *Id.* (citations omitted).

It is worthy of note, given the pleading construct here, that a plaintiff's discharge of the

obligation to state a plausible claim against *some* defendants does not operate as a discharge of the obligation to state a claim against *all* defendants.  This Court's review is not to assess the viability of a plaintiff's claim against a collection of defendants generally, but to review whether a plaintiff has offered sufficient allegations to render each defendant a "plausible defendant." *Id.*, 640 F.3d at 16 quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1ˢᵗ Cir. 2009) ("[W]e must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted[]" (emphasis in original)) and *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 594 (1ˢᵗ Cir. 2011) ("[S]ave under special conditions, an adequate complaint must include not only a plausible claim but also a plausible defendant.").  Based upon the plaintiff's allegations, and upon application of settled legal principles, Brunelle is not a plausible defendant.

**B.  The Official Capacity Claims Can Be Excised Summarily**

First, as a matter of simple housekeeping, it is worthy of threshold mention that, in the second amended complaint, the plaintiff seeks to advance his claims against Brunelle in both his individual and official capacities.  *See* Second Am. Compl., ¶ 8.  As to the official capacity claim, the law is settled that such a claim is one against the municipality itself.  *See Opalenik v. LaBrie*, 945 F.Supp.2d 168, 180 (D.Mass. 2013) (citation omitted); *see also Murphy v. Town of Natick*, 516 F.Supp.2d 153, 158 (D.Mass. 2007) (under state and federal law, an official capacity suit against a police chief is a suit against the municipality itself).  As such, the official capacity claim against Brunelle should be dismissed as duplicative and unnecessarily superfluous to the plaintiff's claims against the City.  *See Opalenik*, 945 F.Supp.2d at 180 (treating official capacity claims against individual officers as redundant of claims against municipalities); *see also Doe v. Fournier*, 851 F.Supp.2d 207, 214-15 (D.Mass. 2012) ("Every claim that Plaintiff has brought

11

against these individuals in their official capacities also includes the Town of Palmer and the Town of Palmer School Committee as defendants.  Consequently, Plaintiff's claims against the school committee members are superfluous, as Plaintiff may recover any damages she is entitled to through her claims against the municipal defendants." (citations omitted)).  This Court should "opt for simplicity and proceed" to consideration of the individual claims only.  *See Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 42 n.1 (1st Cir. 2005).

### C.   The Plaintiff Fails In Discharging His Unavoidable Obligation To Plead Factual Content Sufficient To Render Brunelle A Proper § 1983 Defendant

The plaintiff's first two claims against Brunelle assert that Brunelle is liable to the plaintiff pursuant to § 1983; as to the constitutional triggers for those causes of action, the plaintiff cites to his federal constitutional rights to remain free from unreasonable seizure and from excessive force.  *See* Second Am. Compl., ¶¶ 54-59.[4]  Neither of those conceptual variations of a constitutional theme is an appropriate contention as to Brunelle.

The inquiry begins with first principles.  In order to sustain a § 1983 claim, a plaintiff must demonstrate that challenged conduct was committed by a person acting under color of state law and that the conduct worked a deprivation of rights, privileges or immunities as secured by the United States Constitution or federal law.  *See* 42 U.S.C. § 1983; *see also Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997), cert. denied, 522 U.S. 819 (1997).   Further, it is an unassailable proposition of law, deriving from the statutory reference that § 1983 liability only may exist as to those defendants who "subject[] or cause[] to be subjected" any citizen to a deprivation of federal

---

[4] More specifically, the plaintiff cites to the Fourth, Fifth, Eighth and Fourteenth Amendments.  *See* Second Am. Compl., ¶¶ 55, 58.  As the Fifth and Eighth Amendments can have no application in this set of circumstances; *see, e.g., Graham v. Connor*, 490 U.S. 386, 388 (1989) (all excessive force claims against a law enforcement officer for conduct during the course of an arrest or seizure are to be analyzed under the Fourth Amendment's objective reasonableness standard); it is assumed that the plaintiff means to claim that his theories arise under the Fourth Amendment as those principles are incorporated and applied to the actions of local officials through the Fourteenth Amendment.

rights; *see* 42 U.S.C. § 1983; that consideration of § 1983 liability requires a separate assessment as to the actions of each defendant.  *See Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999); *see also Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 502 (1st Cir. 2011); *Ocasio-Hernandez*, 640 F.3d at 16.

In carrying out that assessment in this setting for Brunelle, as precedent requires, this Court first is to identify and disregard legal conclusions couched as fact, conclusory labels or the "naked assertions devoid of further factual enhancement . . . ." that are deserving of no consideration in passing upon the legal viability of a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citations omitted); *see also Ocasio-Hernandez*, 640 F.3d at 12 (citations omitted).  That task of excision here decimates the second amended complaint's operative references to Brunelle.

As earlier discussed; *see* Section II.B.; the second amended complaint's invocations as to Brunelle consist of a single piece of fleeting, conclusory and factually undeveloped phraseology, lacking in any concrete meaning at all, namely, that Brunelle "joined in" and "participated in" pinning the plaintiff to the ground and that Brunelle "use[d] unlawful and excessive physical force to assist the other individual defendants in bringing plaintiff down."  Second Am. Compl., ¶ 42.  Such formless and conclusory labeling is precisely what the United States Supreme Court has rejected authoritatively in determining that allegations failed to satisfy the standard of plausibility.  *See, e.g., Ashcroft*, 556 U.S. at 680 (rejecting as conclusory allegations that certain defendants "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]" to improper treatment "as a matter of policy, solely on account of [the plaintiff's] religion, race, and/or national origin and for no legitimate penological interest[;]" similarly rejecting, without further factual development, allegations that a defendant was a "principal architect" of a policy

while another was "instrumental" in its adoption and implementation).  Precedent from the First

Circuit Court of Appeals is to the same effect, revealing that "[i]f the factual allegations in the

complaint are too meager, vague or conclusory to remove the possibility of relief from the realm

of mere conjecture, the complaint is open to dismissal."  *Haley v. City of Boston*, 657 F.3d 39, 46

(1st Cir. 2011) (citation omitted).   A complaint fails as a matter of law when it "do[es] not

permit the court to infer more than the mere possibility of misconduct, [because in such a

situation] the complaint has alleged—but it has not shown—that the pleader is entitled to relief."

*Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (citation and internal

punctuation omitted); *see also Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.

1982) ("It is not enough to allege a general scenario which could be dominated by unpleaded

facts.").

       For example, in *Maldonado v. Fontanes*, 568 F.3d 263, 266-67, 274 (1st Cir. 2009), the

First Circuit rejected claims against a defendant who was alleged to have "planned, personally

participated in, and executed . . . raids in concert with others . . ." because the complaint

contained no degree of specific facts as to how the defendant planned or participated in the

events beyond the generalized allegation that he planned and participated.  The same is true here,

as allegations that Brunelle "joined in" and "participated in" force amounts to conclusory

labeling without even a moderately developed factual presentation.  The plaintiff has done no

more than infer "the mere possibility of misconduct" rather than articulate facts that possess

enough heft to pass the plausibility threshold.

       This Court finds itself on a path similar to one previously walked by Judge Timothy

Hillman.  In *Diaz v. Devlin*, 229 F.Supp.3d 101, 107-108 (D.Mass. 2017), Judge Hillman was

presented with a matter in which the plaintiffs brought suit against a number of law enforcement

officials arising out of a SWAT raid into an apartment from which the target of a search warrant had moved months earlier.  One defendant, Jeffrey Carlson, moved to dismiss the claims made against him, which included § 1983 claims of an unreasonable search and seizure as well as excessive force and state law assault and battery claims.  *See id.*, 109-12.  According to Carlson, the complaint's allegations that he was "involved" in the investigation and raid were insufficient to state a plausible claim against him.  *See id.*, 109-10.  Judge Hillman agreed, noting that:

> [p]laintiffs have made general allegations that Det. Carlson was a member of the WPD vice squad involved in the Jackson investigation, had Jackson under surveillance at another address, helped plan the raid, and 'assisted' in carrying out the raid.  Plaintiffs have not pled any specific facts which link Det. Carlson, directly or indirectly, to any of the alleged unlawful conduct.  Such bare-bones allegations are insufficient to establish a plausible Section 1983 claim against Det. Carlson for illegal search and/or use of excessive force.

*Id.*  Given that the plaintiffs' factual assertions against Carlson in *Diaz* were more substantial than the foundation that the plaintiff has laid in this matter as to Brunelle, since the *Diaz* plaintiffs' allegations were insufficient to state a claim, the same result should be embraced here.

What is more, here there are suspenders that may be added to the belt of settled law on this issue—the plaintiff fundamentally misapprehends the Dumais testimony on which his house of cards concerning Brunelle is built.  Reviewing the transcript of Dumais' testimony, *all* that Dumais said was that Brunelle "was also there[]" and, when queried as to what Dumais saw Brunelle doing, he replied only "[h]e was also going to assist Officer Kozlowski."  Attachment A.  Dumais never testified that Brunelle touched the plaintiff or even came within spitting distance of the plaintiff.  *See* Attachment A.  In fact, while the plaintiff makes very specific allegations about how Kozlowski and Ortiz particularly touched his person, prevented his freedom of movement and otherwise, he says, acted unconstitutionally, there is nowhere to be found any similar assertion that Brunelle ever touched the plaintiff or acted otherwise to the

plaintiff's constitutional detriment.  *See generally* Second Am. Compl.; *see also* Attachment A (testimony of Dumais; explaining how Dumais and Kozlowski attempted to keep control of the plaintiff and handcuffed him, with no mention of any involvement in those endeavors by Brunelle).  That lack of a factual foundation for Brunelle likely is the reason why the plaintiff did not bother even to mention Brunelle or his alleged actions in his presentment letter to the City. *See* Attachment C.

In the last analysis, the plaintiff here, as to Brunelle, has done what the federal courts have determined to be insufficient in attempting to discharge his pleading burden:  he has sought to ensnare Brunelle in protracted litigation based upon allegations that are "so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual[]'" and represent "naked assertions devoid of further factual enhancement."  *Soto-Torres v. Fraticelli*, 654 F.3d 153, 156, 158 (1st Cir. 2011) (citation and internal punctuation omitted).  Brunelle is entitled to the dismissal of the § 1983 claims in Counts I and II of the second amended complaint.

### D.  The Plaintiff Fails To State Viable Assault And Battery Claims

Next, Counts IV and V of the second amended complaint respectively claim that Brunelle committed an assault and battery and an "intentional" assault and battery upon the plaintiff.  *See* Second Am. Compl., ¶¶ 66-71.  These claims are illogical as to Brunelle.

To begin, it is true that claims of assault and battery can be made against police officers who use excessive force in the discharge of official functions.  *See Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010).  Civil assault in Massachusetts requires that a defendant "act[ed] intending to cause a harmful or offensive contact" with a plaintiff, "or [acted to create] an imminent apprehension of such a contact," and that a plaintiff was "thereby put in such imminent

apprehension."  Restatement (Second) of Torts § 21 (1) (1965); *see also Conley v. Romeri*, 60 Mass.App.Ct. 799, 805 n.6 (2004) (citing Restatement).  The analytically intertwined tort of battery represents a completed assault, in that the intention of a defendant to cause a harmful or offensive contact resulted, directly or indirectly, in such a harmful or offensive contact.  *See Waters v. Blackshear*, 412 Mass. 589, 590-91 (1992).

There truly is no need to tarry as to these claims against Brunelle.  As to Count V, the claim of an intentional assault and battery, in December, 2020, plaintiff's counsel agreed that the claim ought be dismissed; *see* Section II.D.; *see also* Attachment B (indicating willingness to dismiss Count V); although the later-filed second amended complaint nevertheless continues to include the claim.  More substantively, the second amended complaint contains no assertion that Brunelle ever intended to cause a harmful or offensive contact with the plaintiff, putting the plaintiff in imminent apprehension of such contact, or then completed such a touching.  *See generally* Second Am. Compl.; *see also* Second Am. Compl., ¶¶ 25-29, 31-41 (describing allegations as to how, precisely, the plaintiff says that Kozlowski, Ortiz and Dumais touched his person).  Again, no one, including the plaintiff, indicates that Brunelle ever touched the plaintiff or placed the plaintiff in fear of such a touching.  To say simply that someone "joined" or "participated" in an event without appropriate factual development fails to satisfy the plausibility requirement that is required of the plaintiff at this stage of the litigation.  These claims of assault and battery should be dismissed.

## IV.    CONCLUSION

For all of the above reasons, this Court should dismiss all claims made against Brunelle and grant such other relief as this Court deems appropriate.

17

DEFENDANT JOSEPH BRUNELLE,
By his attorney,

/s/ Andrew J. Gambaccini
Andrew J. Gambaccini
Reardon, Joyce & Akerson, P.C
4 Lancaster Terrace
Worcester, MA 01609
508.754.7285
BBO #:  654690
agambaccini@rja-law.com