# ATTACHMENT C

# MCLANE | MCLANE

Abbe W. McLane, Esq.
abbe@mclanelaw.com
Licensed in MA, CT, NC

Ryan P. McLane, Esq.
ryan@mclanelaw.com
Licensed in MA, CT

October 2, 2020



John L. Vieau, Mayor
City of Chicopee
17 Springfield Street
Chicopee, MA 01013



Marshall T. Moriarty, City Solicitor
17 Springfield Street, 1st Floor
Chicopee, MA 01013

Re: **Presentment of Tort Claim**
**Matthew E. Crane v. City of Chicopee**

Dear Messrs. Vieau and Moriarty:

Pursuant to Massachusetts General Laws Chapter 258, §4, I am hereby presenting a claim on behalf of Matthew E. Crane, 27 Elmore Avenue, Springfield, Massachusetts. The facts of Mr. Crane's claim are as follows:

On October 6, 2018, the Claimant Matthew Crane was operating his motorcycle in a lawful manner. At the time, there existed no probable cause that a crime had been committed, nor a reasonable suspicion to justify police pursuit. Nonetheless Officer Joseph Kozlowski of the Chicopee Police department decided to pursue him.

Officer Kozlowski was on Grove Street in Chicopee after heard engines revving. He passed two motorcycles and two cars, which were parked on the side of the road. He then had a "gut feeling" that the vehicles were going to race, so when the vehicles proceeded into the roadway, Officer Kozlowski conducted a U-turn and began following them. He could see the vehicles go onto Broadway, but lost sight of them soon after. He then heard a crash, travelled in the direction of the sound and saw a motorcycle on the ground. Another car was pulled over. Officer Kozlowski saw a male and two females. The male was lying on his back, not moving. He was conscious and somewhat alert. The man on the ground was Matthew Crane. Neither Officer Kozlowski, nor any other Chicopee Police Officer, ever questioned the women on scene, nor did they ever ask who they were. Officer Kozlowski admitted that he had no probable cause to believe a crime had been committed at this point.

975-A SPRINGFIELD STREET · P.O. BOX 105 · FEEDING HILLS, MASSACHUSETTS 01030
TELEPHONE 413.789.7771 · FAX 413.789.7731
WWW.MCLANELAW.COM

1

The officer put his hand on Mr. Crane's shoulders and realized that Mr. Crane was conscious. He told Mr. Crane to stay put. Mr. Crane stood up, so Officer Kozlowski put his hands-on Mr. Crane's shoulders. Officer Kozlowski then put Mr. Crane in an "escort position." The officer's right hand was on Mr. Crane's right elbow, and the officer's left hand was on Mr. Crane's left hand. One of Mr. Crane's hands was held behind his back. Mr. Crane was not under arrest. At Mr. Crane's criminal trial, Officer Kozlowski testified that Mr. Crane was being detained because of "... you know, just his demeanor." At that point, although Officer Kozlowski had lost sight of the other two vehicles he originally observed, but felt the vehicles were speeding (although he never observed them). He still had no probable cause to make an arrest.

While in the "escort position," Mr. Crane was still trying to pull away from the officer. Mr. Crane was still in the officer's control when Officer Eric Ortiz arrived. At that point Officer Ortiz took Mr. Crane's left arm. Officer Ortiz then commanded Mr. Crane to sit down, but Mr. Crane did not want to be touched by them and escaped their grasp. Officer Ortiz "attempted" a two-man arm bar takedown of Mr. Crane. Officer Kozlowski ended up conducting a "football tackle" on Mr. Crane. Mr. Crane was still not placed under arrest, nor did probable cause exist to suggest that he had committed a crime.

The beating continued. Mr. Crane was standing nearby when Officer Dumais arrived. Officer Kozlowski felt that Mr. Crane had been involved in a major motorcycle crash, and he had not spoken any words, and "wasn't acting normal." Mr. Crane sat up. He would not speak to the officers, but then said he needed to urinate. The officers told him he could not do so. After a few more minutes passed, the officers stood Mr. Crane up and he walked away from the waiting ambulance. Although the officers still had control of Mr. Crane, they nonetheless decided to carry out an arm bar takedown on him. This was done in the name of public safety, as part of community caretaking, "[s]omething wasn't right ... [a]nd [Officer Kozlowski] couldn't just let him walk away". Officer Kozlowski acknowledged Mr. Crane had a right to refuse medical treatment. Mr. Crane was not actively restraining when they took him down. Officer Kozlowski had a concern that Mr. Crane might have been seriously injured in a motorcycle accident; it is not Chicopee Police Department policy to tackle injured persons. No firearm was dislodged on either the football tackle, the two-man arm bar takedown, forcing Mr. Crane to the ground, nor did the officer feel a gun.

Officer Ortiz stated the two-man arm bar takedown is only used on combative subjects who had been involved in vehicle accidents. Officer Ortiz believed Mr. Crane could have refused medical treatment and just walked away from the accident.

Officer Micky Dumais arrived on the scene and saw Officer Kozlowski and Mr. Crane in a scuffle. By the time he reached them, Officer Kozlowski had him somewhat under control, and the two of them sat Mr. Crane up. Officer Dumais held Mr. Crane's arms and told him he could not go, and Mr. Crane continued to pull away so they held him down on the ground. Officer Dumais never saw a gun. An EMT on the scene, Ross Domingos, saw a tussle or wrestling with officers. He saw two officers on top of Mr. Crane and he stated that he saw a gun. The officers piled on top of Mr. Crane. No officer saw or heard a gun fall to the ground. At trial, the EMT testified that he did not recognize the firearm that was tagged into evidence and used at Mr. Crane's criminal trial.

The Chicopee police officers then charged Mr. Crane with six charges in an attempt to cover up their misconduct: operating a motor vehicle with a suspended license, reckless operation of a motor vehicle, carrying a firearm without a license, possessing a firearm without an FID card, resisting arrest and assault and battery on a police officer. Mr. Crane was held on $1,500 cash bail based on their allegations, which he was able to post, having to deposit the money with the clerk.

2

These charges were brought to trial before Judge Melikian on January 30, 2020. Prior to the start of the trial, the Commonwealth entered a nolle prosequi on the resisting arrest charge. After presenting all of the Commonwealth's evidence and resting its case, the prosecutor offered to dismiss the assault and battery on a police officer charge and Mr. Crane's motion for a required finding on that charge was allowed. The Commonwealth withdrew the operating a motor vehicle after suspension of a license charge. The court also allowed a required finding on the charge of reckless operation of a vehicle to endanger. The only charges that went to the jury were the firearm possession charges. After a short period of deliberations, Mr. Crane was found not guilty by a jury of his peers.

Mr. Crane has a superficial knee injury from the motorcycle accident; however, he suffered a significant shoulder injury: a displaced fracture of shaft of right clavicle, caused by the unwarranted, unnecessary and unconstitutional use of excessive force by the Chicopee Police Officers. On November 30, 2018, Mr. Crane had an Open Reduction Internal Fixation of his Clavicle surgery carried out at Baystate Medical Center.

As a result of the shoulder injury caused by the repeated tackling and taking down of Mr. Crane, he has incurred $74,150.43 in medical bills to date, comprised of $3,601 from New England Orthopedic Surgeons, $62,924.62 from Baystate Medical Center, and $7,624.81 from ATI physical therapy. He is still in treatment. In addition, Mr. Crane has experienced significant pain and suffering due to his injuries, and from having to defend himself for the cover charges brought against him by the Chicopee Police in an attempt to cover up their own wrongdoing.

It is Mr. Crane's position the officers' conduct constituted excessive force in violation of his constitutional rights, and suit will be brought against the officers individually under 42 USC § 1983. The letter concerns presentment of his claim if, in the alternative, the finder of fact should find the officers' conduct *merely negligent*. In such case then Mr. Crane is claiming entitlement to $100,000 in damages from the City of Chicopee.

Pursuant to G.L. c. 258, Mr. Crane will amend his complaint against the City of Chicopee in six months unless this matter is resolved. Thank you for your attention to this matter.

Very truly yours,

Ryan P. McLane, Esq – BBO 697464
McLane & McLane, LLC
975-A Springfield Street
Feeding Hills, MA 01030
(p) (413) 789-7771
(f)  (413) 789-7731
ryan@mclanelaw.com

John B. Stewart, Esq – BBO 551180
Murphy & Manitsas, LLP
20 Maple Street, Suite 301
Springfield, MA 01103
(p) (413) 206-9134
(f)  (413) 733-4403
thetrialer@aol.com

3